IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AETNA INC. | : | CIVIL ACTION |
| | : | |
| v. | : | No. 18-470 |
| | : | |
| KURTZMAN CARSON CONSULTANTS, | : | |
| LLC | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                 **March 29, 2019**

Plaintiff Aetna Inc. brings this action against Kurtzman Carson Consultants (Kurtzman) seeking indemnity, contribution, reimbursement, and damages for liability Aetna has incurred and continues to incur as a result of Kurtzman's acts, errors, omissions, and gross negligence in handling Aetna insureds' protected health information while serving as settlement administrator for two lawsuits filed against Aetna in California and Florida (the *Doe* lawsuits). The liabilities for which Aetna seeks indemnification include, but are not limited to, the $17,162,000 settlement in *Beckett v. Aetna Inc.*, a nationwide class action filed against Aetna in this Court on behalf of Aetna insureds who received a notice regarding the settlement of the *Doe* lawsuits on which their confidential HIV-related information was visible to third parties. Aetna also seeks injunctive relief and/or replevin requiring Kurtzman to return its insureds' protected health information to Aetna and to delete and destroy any copies of such information. Kurtzman moves to dismiss the case for lack of personal jurisdiction and improper venue pursuant to Federal Rule of Civil Procedure 12(b)(2) and (b)(3), to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a), or, alternatively, to dismiss or transfer the case in deference to a similar action that a related entity—KCC Class Action Services, LLC (KCC)—filed against Aetna in the Central District of California. For the reasons set forth below, the Court finds that Kurtzman is subject to personal jurisdiction in Pennsylvania and that venue is proper in this district, but that transfer to

the Central District of California is warranted upon consideration of the relevant private and public interests. Kurtzman's motion will therefore be granted insofar as this case will be transferred to the Central District of California.

## BACKGROUND[1]

This action arises from Kurtzman's service as settlement administrator for the *Doe* lawsuits, two putative class actions filed against Aetna and certain of its subsidiaries and affiliates in federal district court in California and Florida, in which the plaintiffs challenged Aetna's alleged requirement that members of its health plans obtain HIV medications through the mail instead of a retail pharmacy.[2] *See* Compl. ¶ 11; Adams Decl. Ex. P, at 1. Although the *Doe* lawsuits were

---

[1] In evaluating a motion to dismiss for lack of personal jurisdiction or improper venue, or for transfer, a court may consider evidence outside the complaint. *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012) (venue); *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) (personal jurisdiction); *Thompson v. Equifax Info. Servs., LLC*, No. 17-902, 2018 WL 1381135, at *3 n.3 (E.D. Pa. Mar. 19, 2018) (transfer).

[2] Kurtzman asserts that KCC, not Kurtzman, was the entity hired to serve as settlement administrator for the *Doe* lawsuits and that Aetna has thus sued the wrong party. According to Kurtzman's counsel, Kurtzman and KCC are "sister companies" with different operational areas, Tr. 8, July 11, 2018, though both are based in California, *see* Compl. ¶ 5 (alleging Kurtzman "is a Delaware limited liability company, with its principal place of business in California"); Foster Decl. ¶ 14 (describing KCC as a "California resident"). KCC "typically provides claims and notice administration services with respect to class action resolution," while Kurtzman "typically does administration services related to notices related to bankruptcies." Tr. 8, July 11, 2018. Kurtzman notes that KCC, rather than Kurtzman, is listed as the counterparty on the proposal and cost estimate for the *Doe* engagement. *See* Foster Decl. Exs A-1, A-3.

Aetna disputes that KCC is the proper defendant, noting, inter alia, that Kurtzman and KCC are closely related entities that use the same "KCC" brand; Kurtzman is identified as the claims administrator in the settlement agreement in the *Doe* lawsuits, Adams Decl. Ex. P (Exhibit D to settlement agreement); Kurtzman (not KCC) entered into tolling and common interest agreements with Aetna; and crucial witnesses (including Patrick Ivie, who circulated the proposal and cost estimate for the *Doe* engagement to counsel) identify themselves as employees of Kurtzman, not KCC, *id.* ¶ 12 & Ex. K.

Whether Kurtzman is the proper defendant in this case is a merits issue that this Court need not (and cannot) resolve at this juncture, where the questions before the Court are whether Kurtzman is subject to personal jurisdiction for this action in this district and whether venue is proper in this district. Because "in deciding a motion to dismiss for lack of jurisdiction, a court is

filed as putative class actions, the cases did not settle on a class-wide basis. Rather, the settlement was among the four individuals named as plaintiffs in the *Doe* lawsuits and Aetna and its affiliates. *See* Adams Decl. Ex. P. Nevertheless, as part of the settlement, Aetna agreed to provide written notice to certain putative class members advising them of their options when filling prescriptions for HIV medications (the Member Notice). Compl. ¶ 12. Aetna also agreed to provide a separate written notice to certain putative class members regarding their right to file a claim for refunds of certain out-of-pocket costs under the settlement agreement (the Settlement Notice). *Id.*

As settlement administrator, Kurtzman was responsible for mailing both the Member Notice and the Settlement Notice to putative class members and processing claims submitted as part of the settlement. *Id.* ¶ 14. Aetna alleges that, prior to mailing the Member Notice, Kurtzman knew or should have known it was handling confidential protected health information, including confidential HIV-related information, and knew or should have known that the words "HIV Medications" appeared immediately below the recipient's name and address in the Member Notice. *Id.* ¶ 16.

On July 28, 2017, Kurtzman mailed the Member Notice to approximately 12,000 putative class members around the country, including nearly 700 putative class members in Pennsylvania, using envelopes with a transparent address window. *Id.* ¶¶ 1, 17. Before undertaking the mailing, Kurtzman did not advise Aetna or its counsel in the *Doe* lawsuits[3] that it would be using a window

---

required to accept the plaintiff's allegations as true, and . . . to construe disputed facts in favor of the plaintiff," *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)), the Court assumes, for purposes of this motion, that Kurtzman is a proper defendant.

[3] Aetna was represented in the *Doe* lawsuits by attorneys in the Los Angeles, California, office of Gibson Dunn. Foster Decl. ¶¶ 6-7.

envelope to mail the Member Notice, did not show the final version of the Member Notice inside an envelope to Aetna or its counsel, and did not perform any testing or quality assurance to ensure that protected health information could not be seen through the envelope's window. *Id.* ¶ 18. On the contrary, in a proposal submitted to the parties' California-based counsel in the *Doe* lawsuits,[4] Kurtzman represented that it would use a #10 *window* envelope to mail the Settlement Notice, but would use a #10 envelope to mail the Member Notice. *Id.* ¶ 15.

In early August 2017, Aetna began receiving calls and emails from putative class members who had received the Member Notice, reporting that the words "HIV Medications" could be seen through the window in the envelope, below the recipient's name and address. *Id.* ¶ 19. On August 28, 2017, Andrew Beckett, a recipient of a Member Notice with the words "HIV Medications" visible, filed a putative nationwide class action lawsuit against Aetna in this Court, alleging, inter alia, that the positioning of the Member Notice in window envelopes allowed unauthorized persons to view the recipients' confidential HIV-related information, causing the recipients substantial damage and harm. *Id.* ¶ 20. Six additional class action lawsuits were filed against Aetna in this Court, in federal courts in California, Connecticut, and Missouri, and in California state court. Compl. ¶ 22. All of those cases were ultimately joined and/or consolidated with the *Beckett* action in this district.[5] *See id.* ¶ 23.

_____

[4] The proposal was submitted to an attorney at Gibson Dunn in Los Angeles and an attorney at Whatley Kallas in San Diego, California. Foster Decl. Exs. A-1, A-3. Although Aetna's counsel provided comments on the proposal, *id.* Ex. A-2, the proposal was never signed by Kurtzman, KCC, or either of the lawyers who received it, Tr. 10, July 11, 2018.

[5] At the time the Complaint in this case was filed, the Missouri action had not yet been consolidated with the *Beckett* action. That case was subsequently consolidated by Order of March 14, 2018. *Beckett v. Aetna, Inc.*, No. 17-3864 (E.D. Pa. Mar. 14, 2018), ECF No. 55.

On January 17, 2018, the plaintiffs in the consolidated *Beckett* action filed a motion for preliminary approval of a class action settlement. *Id.* ¶ 24. As part of the settlement, Aetna agreed to pay $17,162,000 in settlement of all claims, while preserving the right to pursue all claims against non-parties to the settlement, including claims against Kurtzman for contribution, indemnity, reimbursement, and damages. *Id.* The settlement was preliminarily approved by Order entered on May 10, 2018. *Beckett*, No. 17-3864 (E.D. Pa. May 10, 2018), ECF No. 59. A final approval Order was entered on October 16, 2018. *Beckett*, No. 17-3864 (E.D. Pa. Oct. 16, 2018), ECF No. 72.

In addition to the class actions, three individual actions concerning the Member Notice have been filed against Aetna in state and federal court in California and federal court in New Jersey. Compl. ¶ 25. Aetna is also the subject of investigations by several state attorneys general and the United States Department of Health and Human Services, which could potentially lead to civil penalties against Aetna. *Id.* ¶ 27.

In October 2017 and January 2018, Aetna sent letters to Kurtzman, demanding that Kurtzman defend, indemnify, and/or hold Aetna harmless from and against any liability, damages, payments, penalties, claims, losses, and costs and expenses relating to the privacy incident involving the Member Notice and the lawsuits and investigations to which Aetna has been subject as a result of the privacy incident. *Id.* ¶ 29 Aetna has also made numerous requests since August 2017 for Kurtzman to return, delete, and destroy certain confidential data and information about putative class members in the *Doe* lawsuits. *Id.* ¶ 31. Kurtzman, however, refused these demands and requests, prompting Aetna to file the instant lawsuit in February 2018. *Id.* ¶¶ 30, 32. Aetna brings claims for implied indemnity, equitable indemnity, contribution pursuant to 42 Pa. Cons. Stat. Ann. § 8324, declaratory relief, and negligence, alleging that Kurtzman should be required to

defend and indemnify Aetna for the liability it has incurred and continues to incur as a result of the privacy incident described above—or to pay its proportionate share of such liability—because Kurtzman, not Aetna, is at fault for the incident. Aetna also brings a claim for replevin and/or injunctive relief seeking return and destruction of any protected health information of Aetna insureds in Kurtzman's possession.

The day after Aetna filed this action, KCC filed suit against Aetna in the Central District of California, asserting claims against Aetna arising out of the privacy incident involving the Member Notice. KCC alleges that Aetna, through counsel, entered into a contract with KCC by accepting KCC's proposal and cost estimate, with accompanying Terms and Conditions, to serve as settlement administrator for the *Doe* lawsuits. KCC further alleges that, under the terms of that contract, Aetna is required to indemnify KCC for any losses arising from the *Doe* engagement. In addition to seeking damages from Aetna for breach of its contractual duty to indemnify and for negligence/failure to warn, KCC seeks a declaratory judgment that Aetna is obligated to indemnify KCC pursuant to the parties' agreement (including a declaration that the indemnification provision is valid and enforceable and that Aetna is a party to the agreement) and that KCC has no obligation to provide indemnity, contribution, and/or reimbursement to Aetna.

Kurtzman moves to dismiss this case for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) or, alternatively, to transfer the case to the Central District of California pursuant to 28 U.S.C. § 1404(a).[6] In addition, Kurtzman moves

---

[6] Kurtzman also moves to dismiss this action or transfer it to the Central District of California based on the first-filed rule, which provides that where two federal courts have concurrent jurisdiction over proceedings involving the same parties and issues, "the court which first has possession of the subject matter must decide it." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)). Although the KCC action was filed the day after this action, Kurtzman argues the KCC action is properly regarded as first-filed because Aetna filed this case only after KCC's counsel rejected Aetna's

to stay this action in light of a separate action Aetna filed in this Court in May 2018 seeking indemnity, contribution, reimbursement, and damages for the liability it has incurred as a result of the privacy incident involving the Member Notice from the attorneys who represented the plaintiffs in the *Doe* lawsuits—the law firm of Whatley Kallas, LLP/Whatley Kallas, LLC and consumer advocacy organization Consumer Watchdog. *See Aetna Inc. v. Whatley Kallas, LLC*, No. 18-2172 (E.D. Pa. filed May 23, 2018). In that action, Aetna alleges Whatley Kallas and Consumer Watchdog's "acts, errors, omissions and negligence" proximately caused the privacy incident because one or both of them proposed using Kurtzman as settlement administrator, was the sole "client" in Kurtzman's proposal for the engagement, demanded that Aetna produce the putative class members' protected health information to Kurtzman, and supervised Kurtzman's work as settlement administrator, yet they failed to take steps to ensure the confidentiality of the protected health information, including by failing to review the final proofs of the envelopes to be used in

---

request to submit to binding arbitration, proposed confidential mediation as an alternative, and provided Aetna with a draft complaint that KCC intended to file if the matter could not be resolved privately. Kimrey Decl. Ex. B-1. Aetna disputes that it filed this case anticipatorily, noting that prior to filing, it had sent Kurtzman multiple letters demanding indemnification and return of the protected health information over a period of months. In particular, Aetna notes that on January 19, 2018, it notified Kurtzman that if Kurtzman rejected Aetna's demand for indemnification, Aetna intended to "promptly seek indemnification, reimbursement and/or contribution from [Kurtzman]." Kanny Decl. ¶ 12. The parties also raised their arguments regarding the first-filed rule in the KCC action, and on April 20, 2018, the court in that case found this action was first-filed and stayed the KCC action pending this Court's ruling on Kurtzman's motion to dismiss or transfer. *See* Notice of Ruling in Second-Filed Action (attaching ruling in KCC action), ECF No. 30. Although Kurtzman urges this Court to revisit the issue of whether this action or the KCC action is first-filed, *see* Tr. 45-46, July 11, 2018, the Court sees no reason to do so. Accordingly, insofar as Kurtzman moves to dismiss, transfer, or stay this case based on the first-filed rule, the motion will be denied. The Court notes that the first-filed inquiry is separate from the § 1404(a) transfer analysis, and "a finding that the first-field rule is applicable does not preclude a transfer to the forum where the second action was filed." *Devorris v. Cummings Inc.*, No. 3:2006-183, 2007 WL 1875816, at *7 (W.D. Pa. June 27, 2007).

sending out the Member Notice and the Settlement Notice.[7]  *See* Compl. ¶¶ 1, 15, 18-20, 24-27, 42, 46, 49, 53 in *Whatley Kallas, LLP*, No. 18-2172 (E.D. Pa. May 23, 2018).  Kurtzman argues a ruling on Kurtzman's motion to dismiss or transfer should be stayed so that the personal jurisdiction, venue, and transfer issues in this case and in the Whatley Kallas case can be decided together.  Because these issues will be decided contemporaneously, Kurtzman's motion will be dismissed as moot.

**DISCUSSION**

### A.      Personal Jurisdiction

When personal jurisdiction is challenged, the burden is on the plaintiff to show jurisdiction exists.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).  While the plaintiff ultimately must establish the relevant jurisdictional facts by a preponderance of the evidence, the plaintiff need only make a prima facie showing of jurisdiction at the motion to dismiss stage, unless the court holds an evidentiary hearing.  *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) (citing *Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).  In reviewing a Rule 12(b)(2) motion to dismiss, the court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff."  *Id.*

A federal district court has personal jurisdiction over parties to the extent provided under the law of the state in which the court sits.  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).  The Pennsylvania long-arm statute provides for jurisdiction "based on the most

---

[7] The same day it sued Whatley Kallas and Consumer Watchdog in this Court, Aetna filed a substantially identical action against the same defendants in the Superior Court of Los Angeles County.  That state court action has since been dismissed pursuant to California's Strategic Lawsuits Against Public Participation statute, Cal. Civil Procedure Code § 425.16, but the dismissal is currently on appeal.

minimum contact with this Commonwealth allowed under the Constitution of the United States."

42 Pa. Cons. Stat. Ann. § 5322(b).  Hence, to determine whether personal jurisdiction exists in this

case, the court considers whether the defendant has "certain minimum contacts with . . .

[Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play

and substantial justice."  *O'Connor*, 496 F.3d at 316 (alterations in original) (quoting *Int'l Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction:  general jurisdiction and specific jurisdiction.

*Id.* at 317.  A court may exercise general jurisdiction to hear any and all claims against a defendant

if the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it]

essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)

(alterations in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915,

919 (2011)).  The exercise of specific jurisdiction, in contrast, is appropriate only when the suit

"aris[es] out of or relat[es] to the defendant's contacts with the forum."  *Bristol-Myers Squibb Co.*

*v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (emphasis omitted) (quoting *Daimler*, 571 U.S.

at 127).  Personal jurisdiction may also be established by express or implied consent, even when

the defendant's contacts with the forum would not otherwise be sufficient to sustain general or

specific jurisdiction.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985); *Bane v.*

*Netkirk, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991) ("Consent is a traditional basis for assertion of

jurisdiction long upheld as constitutional.").

Aetna argues Kurtzman is subject to jurisdiction under two theories.  First, Aetna argues

Kurtzman consented to general jurisdiction in Pennsylvania by registering to do business in this

Commonwealth.  And second, Aetna argues Kurtzman is subject to specific personal jurisdiction

in this action by virtue of its activities in Pennsylvania, including sending nearly 700 Member Notices to Aetna insureds in Pennsylvania.

Aetna's argument for jurisdiction by consent is based on 42 Pa. Cons. Stat. Ann. § 5301, which provides that the existence of certain relationships between a person and the Commonwealth of Pennsylvania "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person . . . and to enable such tribunals to render personal orders against such person." 42 Pa. Cons. Stat. Ann. § 5301(a). For corporations or other similar entities, the relationships giving rise to personal jurisdiction include, qualifying as a "foreign corporation" or a "foreign entity"[8] under Pennsylvania law, *id.* § 5301(a)(2)(i), (a)(3)(i), and consenting to jurisdiction, *id.* § 5301(a)(2)(ii), (a)(3)(ii). The statute further provides that "[w]hen jurisdiction over a person is based upon this section[,] any cause of action may be asserted against him, whether or not arising from acts enumerated in this section." *Id.* § 5301(b).

The Third Circuit has interpreted § 5301 to establish that registering as a foreign corporation in Pennsylvania "carries with it consent to be sued in Pennsylvania courts," irrespective of whether there would otherwise be a basis for general or specific or jurisdiction. *Bane*, 925 F.2d at 640. Applying this interpretation, the court in *Bane* held a Delaware company that applied for and received authorization to do business in Pennsylvania was subject to personal jurisdiction in Pennsylvania in an age discrimination suit, without regard to whether the claim arose out of the company's activities in Pennsylvania or whether the company's business contacts were continuous and systematic. *Id.*

---

[8] A "foreign entity" is "[a]n entity that is not a domestic entity," and an "entity" includes a limited liability company. 15 Pa. Cons. Stat. Ann. § 102(a).

Kurtzman does not dispute that it is registered to do business in Pennsylvania,[9] but argues that *Bane* is no longer good law in light of more recent Supreme Court decisions, most prominently, the decision in *Daimler*, *supra*. In *Daimler*, the Supreme Court considered whether a German car manufacturer was subject to general jurisdiction in California based on the California contacts of its American subsidiary in a suit by Argentinian residents for human rights violations by the German parent company's Argentinian subsidiary. 571 U.S. at 120-21. The American subsidiary was neither incorporated nor headquartered in California; its contacts with the state consisted of the multiple facilities it maintained there and the large volume of luxury vehicles it supplied to the California market. *Id.* at 123. The Supreme Court rejected the argument that these contacts were sufficient to render the subsidiary "essentially at home" in California.

In so holding, the Court reiterated its prior holding that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there," noting that, for a corporation, the "paradigm" fora for the exercise of general jurisdiction are the state of incorporation and principal place of business. *Id.* at 137 (citing *Goodyear*, 564 U.S. at 924). Although the Court acknowledged that *Goodyear* did not hold a corporation may be subject to general jurisdiction *only* in one of these "paradigm" fora, it rejected as "unacceptably grasping" a formulation that would "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business," observing that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 137-39 & n.20 (internal quotation marks omitted).

---

[9] Kurtzman registered to do business in Pennsylvania in 2009, listing a "commercial registered office provider" in Dauphin County. Adams Decl. Ex. D. In 2016, Kurtzman filed an Amendment of Foreign Registration, designating a new commercial registered officer provider in Erie County. *Id.* Ex. E.

In arguing *Bane* is no longer good law after *Daimler*, Kurtzman stresses that allowing the exercise of general jurisdiction based on a corporate defendant's compliance with a state registration statute would potentially "expose companies with a national presence . . . to suit all over the country, a result specifically at odds with *Daimler*." Kurtzman's Reply 2 (quoting *AstraZeneca AB v. Mylan Pharm., Inc.*, 72 F. Supp. 3d 549, 556-57 (D. Del. 2014)). As numerous courts in this district have recognized, however, *Daimler* addressed the due process limits on the exercise of general jurisdiction based on a corporation's contacts with the forum state; the decision did not address jurisdiction based on consent. *See, e.g.*, *Aetna Inc. v. Mednax, Inc.*, No. 18-2217, 2018 WL 5264310, at *5 (E.D. Pa. Oct. 23, 2018) (noting *Daimler* analyzed "when general jurisdiction [may be] appropriately exercised over a foreign corporation that has *not consented* to suit in the forum" (alteration in original) (emphasis added) (quoting *Daimler*, 571 U.S. at 129)). Because *Daimler* did not address the due process limits on consent as a basis for general jurisdiction, district courts in Pennsylvania have uniformly rejected the argument that *Daimler* overturned "the longstanding rule that 'a corporation that applies for and receives a certificate of authority to do business in Pennsylvania consents to the general jurisdiction of state and federal courts in Pennsylvania.'" *Id.* (quoting *Webb-Benjamin, LLC v. Int'l Rug Grp., LLC*, 192 A.3d 1133, 1138 (Pa. Super. Ct. 2018)); *accord Youse v. Johnson & Johnson*, No. 18-3578, 2019 WL 233884, at *3-4 (E.D. Pa. Jan. 16, 2019); *Shipman v. Aquatherm L.P.*, No. 17-5416, 2018 WL 6300478, at *2 (E.D. Pa. Nov. 28, 2018); *Mendoza v. Electrolux Home Prods., Inc.*, No. 17-2028, 2018 WL 3973184, at *3-4 (M.D. Pa. Aug. 20, 2018); *Allstate Ins. Co. v. Electrolux Home Prods.*, No. 18-699, 2018 WL 3707377, at *3-5 (E.D. Pa. Aug. 3, 2018); *Gorton v. Air & Liquid Sys. Corp.*, 303 F. Supp. 3d 278, 297-98 (M.D. Pa. 2018); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-665, 2017 WL 3129147, at *10-11 (E.D. Pa. July 24, 2017); *Hegna v.*

*Smitty's Supply, Inc.*, No. 16-3613, 2017 WL 2563231, at \*3-4 (E.D. Pa. June 13, 2017); *Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 652-55 (E.D. Pa. Sept. 20, 2016).[10]

Kurtzman urges the Court to disregard the cases cited by Aetna, noting they are non-circuit level decisions and are against the weight of authority in any event, as, since *Daimler*, "most federal courts have held that general jurisdiction may not be based solely upon a corporation's compliance with a state's registration statute." Kurtzman's Reply 1-2 (citing *Genuine Parts Co. v. Cepec*, 137 A.3d 123, 145 (Del. 2016) (collecting cases)). Notably, the cases in which courts have rejected compliance with a state registration statute as a basis for jurisdiction by consent have involved registration statutes from states other than Pennsylvania. *See Cepec*, 137 A.3d at 145 n.119 (collecting cases). This is significant because the relevant Pennsylvania statute speaks with unusual clarity on the consequences of registering to do business in Pennsylvania. Unlike a typical registration statute that requires appointment of a registered agent for service of process, Pennsylvania's long-arm statute specifies that "qualif[ying]" as a "foreign corporation" or a

---

[10] Kurtzman notes there is a split among Pennsylvania state courts as to whether registering to do business in Pennsylvania is a valid basis for jurisdiction by consent, citing *Mallory v. Norfolk Southern Railway Co.*, No. 1961, 2018 WL 3025283 (Pa. Ct. Com. Pl. May 30, 2018). In *Mallory*, the Common Pleas Court rejected the notion that registration amounts to *voluntary* consent to jurisdiction in Pennsylvania, given the "Hobson's choice" foreign corporations must make between consenting to general jurisdiction in Pennsylvania or foregoing the opportunity to conduct business here. *Id.* at \*3-5. The court went on to hold that by requiring foreign corporations to submit to general jurisdiction in Pennsylvania as a condition of doing business here, the statutory scheme infringes on other states' ability to try cases against their corporate citizens and thus violates principles of federalism, as protected by the Due Process Clause. *Id.* at \*5-6. In at least two other cases, however, the Pennsylvania Superior Court has held that, even after *Daimler*, registering to do business in Pennsylvania constitutes consent to jurisdiction in this Commonwealth under 42 Pa. Cons. Stat. Ann. § 5301. *See Murray v. Am. LaFrance, LLC*, No. 2105 EDA 2016 (Pa. Super. Ct. Sept. 25, 2018); *Webb-Benjamin, LLC*, 192 A.3d at 1138. None of these decisions represents the final word on this issue in Pennsylvania, as the decision in *Murray* has since been vacated pending en banc review by the Superior Court. The appeal in *Mallory* has been stayed pending the en banc decision in *Murray*.

"foreign entity" under Pennsylvania law "shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(i), (a)(3)(i). The Pennsylvania statute thus "more plainly advise[s] . . . registrant[s] that enrolling in the state as a foreign corporation and transacting business will vest the local courts with general jurisdiction over the corporation" than do registration statutes in other states. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 640 (2d Cir. 2016). Given the wording of the Pennsylvania long-arm statute, which provides notice of the jurisdictional consequences of registering to do business in this Commonwealth lacking in other states' registration statutes, and the fact that *Daimler* did not address consent as a basis for personal jurisdiction—and absent any indication from the Third Circuit that *Bane* is no longer good law— this Court will continue to adhere to *Bane*. The Court therefore concludes Kurtzman is subject to general jurisdiction in Pennsylvania by consent, and Kurtzman's motion to dismiss for lack of personal jurisdiction will be denied.[11]

**B.      Venue**

The Court's resolution of Kurtzman's personal jurisdiction argument is also dispositive of the venue issue in this case. Under the federal venue statute, 28 U.S.C. § 1391, a civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[11] Given this conclusion, the Court need not address Aetna's alternative argument that Kurtzman is subject to specific jurisdiction in Pennsylvania in this case.

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* § 1391(b). Where the defendant is a corporation or other similar entity, for purposes of the venue statute, it "shall be deemed to reside . . . in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2).

Because Kurtzman is subject to personal jurisdiction in this district with respect to this action, it is deemed to reside here under § 1391(c)(2). Hence, venue is proper in this district under § 1391(b)(1), and Kurtzman's motion to dismiss for improper venue will also be denied.

### C. Transfer

Kurtzman next moves to transfer this case to the Central District of California pursuant to 28 U.S.C. § 1404.[12] Section 1404(a) authorizes a district court, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . [to] transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding a § 1404(a) transfer motion, a district court must evaluate various private and public interests protected by the statute to determine "whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (citation omitted). The private interests to be balanced include

> the plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses; . . . the location of books and records[;] [and] all other practical problems that make trial of a case easy, expeditious and inexpensive.

---

[12] Section 1404(a) governs transfer motions "where both the original and the requested venue are proper." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Aetna does not dispute that venue would be proper in the Central District of California, where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2).

*In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (internal citations and quotation marks omitted). The public interests include "the enforceability of the judgment; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; . . . the familiarity of the trial judge with the applicable state law in diversity cases"; and considerations of judicial economy. *Id.* (citations and internal quotation marks omitted). As the party seeking transfer, Kurtzman bears the burden of showing that, on balance, the foregoing private and public interests weigh in favor of transfer. *Jumara*, 55 F.3d at 879 (citation omitted).

As to the private interests, only the first factor—Aetna's forum preference—weighs clearly against transfer, as Aetna, a Pennsylvania corporation, prefers to litigate in this district, where its largest field office and litigation department leadership are located. Aetna's choice of forum is entitled to significant weight in the § 1404(a) analysis, and "should not be lightly disturbed." *Id.* (citation omitted); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

The second factor—Kurtzman's forum preference—weighs in favor of transfer, as Kurtzman prefers to litigate in the Central District of California, where it maintains offices.[13] Kurtzman's forum preference, however, is entitled to less weight than Aetna's in the transfer analysis. *See Infinity Comput. Prods., Inc. v. Toshiba Am. Bus. Sols., Inc.*, No. 12-6796, 2018 WL 1083885, at *5 (E.D. Pa. Feb. 27, 2018).

The third factor requires consideration of where the claim arose. The Complaint alleges this action "arises from matters at issue" in the consolidated *Beckett* action in this district, the

---

[13] According to the complaint in the KCC action, Kurtzman's principal place of business is in El Segundo, California, which is in the Central District of California. Kimrey Decl. Ex. B-1 (Compl. ¶ 20).

defense and settlement of which represents a major portion of the liability for which Aetna seeks indemnity and contribution. Compl. ¶ 2. But the basis for Aetna's claim that Kurtzman should be required to pay for this and other liability Aetna has incurred and may yet incur for the privacy incident is that Kurtzman is at fault for the incident because of its "acts, errors, omissions and gross negligence" as settlement administrator, *id.* ¶¶ 1, 35-39, 46, 58, much of which occurred in California, where Kurtzman is located.

For example, the Complaint alleges Kurtzman misrepresented, in a proposal sent by Kurtzman personnel in California to California counsel for the parties in the *Doe* lawsuits that the Member Notice would be sent using a "#10 envelope," as opposed to a "#10 *window* envelope." *Id.* ¶ 15; *see also* Foster Decl. ¶¶ 5-6 & Exs. A-1, A-3. The Complaint also faults Kurtzman for failing to advise Aetna or its counsel in the *Doe* lawsuits that it would be using a window envelope to mail the Member Notices and for not showing them the final version of the letter and envelope before mailing the letters. Compl. ¶ 18. As Kurtzman was retained as settlement administrator for the *Doe* litigation in California by California counsel for the parties, these omissions would also have occurred in California. Although it is not clear from the record where the Member Notices were printed and mailed,[14] there is evidence that they were formatted by Kurtzman in California. Foster Decl. Ex. A-4. And while the Member Notices were mailed to nearly 700 putative class members in Pennsylvania, they were also mailed to more than 10,000 putative class members in other states, including nearly 2,000 in California, where three of the class actions that

---

[14] Kurtzman does not affirmatively represent that the Notices were mailed from California, and at oral argument, Aetna stated it believes the Notices were mailed from a Kurtzman facility outside California. Tr. 63, July 11, 2018. However, there is no reason to believe the Notices were mailed from Pennsylvania. *See id.* (stating Aetna does not believe Kurtzman has facilities in Pennsylvania).

were ultimately consolidated with the *Beckett* action (and two additional individual actions) were filed. *Id.* ¶¶ 20-22; Compl. ¶¶ 1, 3, 22, 25. Some of the events giving rise to the claims in this case may have arisen in Pennsylvania, but a majority of those events arose in California. This factor therefore weighs in favor of transfer. *See In re Amkor Tech., Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006) ("Typically, the most appropriate venue is where a majority of events giving rise to the claim arose.").

The fourth factor—the convenience of the parties—does not weigh for or against transfer. Each party seeks to litigate in its home forum and will be inconvenienced to some degree if it is forced to litigate away from home.[15] But there is no indication that litigating away from home will be more inconvenient or burdensome for one of the parties, based on their respective physical and financial conditions. *See Leonetti's Frozen Foods, Inc. v. Crew, Inc.*, 140 F. Supp. 3d 388, 394 (E.D. Pa. 2015) (finding the convenience of the parties factor was neutral where "one party w[ould] need to travel to the other forum regardless of which is selected"); *cf. Howmedica*, 867 F.3d at 408 (finding parties' convenience weighed in favor of transfer because it would be "far easier" for an individual defendant with "fewer financial resources" than the corporate plaintiff to litigate in the transferee forum).

The fifth factor—the convenience of witnesses—weighs somewhat in favor of transfer. Although each party argues its preferred forum is more convenient for its witnesses, the Third Circuit has instructed that witness convenience is a factor "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. At oral argument,

---

[15] Kurtzman argues litigating in California will not inconvenience Aetna because its lead counsel are in California, but counsel's convenience "is not a factor to be considered" in the transfer analysis. *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973).

Aetna candidly represented it was not aware of any witnesses who would not be available for trial in either forum.[16] Tr. 66, July 11, 2018. Kurtzman, in contrast, has identified one potential witness who would be unavailable for trial in Pennsylvania. Specifically, Kurtzman maintains that Kathleen Wyatt, the "Senior Project Manager" who served as the "operational person" on the *Doe* matter and circulated drafts of the Member Notice and other documents to counsel, is no longer employed by any Kurtzman entity but still resides in California.[17] Foster Decl. ¶¶ 16, 32 & Ex. A-4; Tr. 44, July 11, 2018. Based on her role in the mailing, Ms. Wyatt appears to be a significant witness who, as a California resident, would not be subject to the subpoena power of this Court; hence, this factor weighs in favor of transfer to some degree.

The remaining two private interests—the location of books and records and practical problems that might make trial easy, expeditious, and inexpensive—are neutral here. The location of books and records matters only "to the extent that the files could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. There is no indication this is a factor here. Nor have the parties identified any "practical considerations that might burden the parties," making trial easier, more expeditious, and less expensive in one of the two fora at issue. *Howmedica*, 867 F.3d at 402 n.7.

As to the public interests, few carry significant weight here. The enforceability of the judgment is neutral, as "it is unlikely that there would be any significant difference in the difficulty

---

[16] In its opposition to the motion to transfer, Aetna notes the mediator who assisted the parties in settling the consolidated *Beckett* action is located in this district. Aetna's Opp'n 21. But Aetna does not suggest the mediator is a potential witness in this matter, except insofar as Kurtzman seeks to challenge the settlement of the *Beckett* action, which Kurtzman did not do.

[17] The lawyers to whom Wyatt circulated the drafts, and who commented on the drafts, would also presumably be witnesses. They, too, are located in California. *See* Foster Decl. ¶¶ 5-6 & Exs. A-4, A-5.

of enforcing a judgment rendered by one federal forum or the other." *Id.* at 410 (quoting 1 James Moore et al., *Moore's Manual: Federal Practice and Procedure*, § 7.81[3][b] (2017)).

The relative administrative difficulty in the two fora is also largely neutral. While Kurtzman cites statistics showing that the median times for civil cases from filing to disposition and from filing to trial are shorter in the Central District of California than in this district, the differences are not significant enough to weigh more than minimally in favor of transfer. *See* Kimrey Decl. ¶¶ 25-26 & Ex. B-2 (median time from filing to disposition in the C.D. Cal. is 4.9 months, as compared to 5.7 months in the E.D. Pa., and median time from filing to trial in the C.D. Cal. is 19.6 months, as compared to 21.3 months in the E.D. Pa.).

The next two factors—the local interest in deciding local controversies at home and the public policies of the fora—are largely neutral as well. Although the *Beckett* action, which accounts for much of the liability for which Aetna seeks indemnity and contribution, was filed and settled in this district, it is difficult to characterize that liability as a local controversy given the nationwide scope of the harm. *See Palagano v. NVIDIA Corp.*, No. 15-1248, 2015 WL 5025469, at *7 (E.D. Pa. Aug. 25, 2015) (holding a putative class action based on a California company's misstatements about a product sold nationwide that was the subject of numerous class actions was "not a 'local controversy' in Pennsylvania"). Moreover, the issue to be decided in this case is who, as between Kurtzman and Aetna, is at fault for the privacy incident. While Pennsylvania has an interest in providing relief for its resident corporations, California also has an interest in redressing harms caused by actions taken within its borders. Neither party identifies any relevant public policy of either forum.

The familiarity of the trial judge with the applicable state law is relevant here, as this is a diversity action; however, the parties dispute whether Pennsylvania or California law applies to

this case. Aetna brings claims under Pennsylvania law, including the Pennsylvania Uniform Contribution Among Tort-feasors Act, 42 Pa. Cons. Stat. Ann. § 8324. Kurtzman argues California law applies pursuant to the contracts that it contends governed its engagement as settlement administrator in the *Doe* litigation, including the Terms and Conditions attached to Kurtzman's proposal for the engagement and the Qualified Protective Order in the *Doe* lawsuits.[18] The Court need not resolve this dispute. Even assuming that Aetna's indemnity and contribution claims are governed by Pennsylvania law, it is apparent that this dispute will also require some consideration of California law, as Kurtzman maintains that Aetna, through counsel, accepted the Terms and Conditions and is bound by the terms of that contract, including the provisions regarding indemnification of KCC and limitation of KCC's liability. *See* Tr. 23, July 11, 2018; Kimrey Decl. Ex. B-1 (Compl. ¶¶ 51, 53-54, 112-15, 142-43, 148). Given the likelihood that this case will involve application of Pennsylvania and California law, this factor is neutral, as both courts would be required to decided issues based on unfamiliar law. *See Palagano*, 2015 WL 5025469, at *7 (observing that although the trial court's familiarity with applicable state law "is a consideration that could tip the balance in an otherwise close call, this factor is of little weight," as "[f]ederal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit" (internal quotation marks and citations omitted)).

Finally, the Court must take into account considerations of judicial economy. Aetna argues judicial economy is best served by keeping the case in this district because the *Beckett* action was filed here and "the interests of justice are best served if this Court determines both the propriety of

---

[18] The Terms and Conditions provide that they will be "governed by and construed in accordance with the laws of the State of California, without giving effect to any choice of law principles." Foster Decl. Ex. A-3. The Qualified Protective Order is not in the record.

the Nationwide Settlement and Aetna's rights to indemnification for it." Aetna's Opp'n 21. Aetna contends having the same court rule on the settlement and the indemnification issue is necessary "to avoid inconsistent results," but *Beckett* was settled without any admission of liability by Aetna, and the settlement expressly preserved Aetna's right to pursue "all claims, including for contribution, subrogation, reimbursement, and/or contractual or equitable indemnity, against all non-parties" to the settlement agreement, including Kurtzman. Settlement Agreement 3 ¶ I, 13 ¶ 4.1, 20 ¶ 9.3 in *Beckett*, No. 17-3864 (E.D. Pa. Jan. 16, 2018), ECF No. 50-3. There is thus no overlap between the issues resolved in the *Beckett* settlement and this action.

Kurtzman argues judicial economy considerations support transfer because Whatley Kallas and Consumer Watchdog may be necessary or indispensable parties who cannot be joined in this action because they are not subject to personal jurisdiction in Pennsylvania. In Kurtzman's view, this case is fundamentally a breach of contract action, such that all parties with rights and obligations under the contract, including Whatley Kallas, which Aetna contends was the "client" for purposes of Kurtzman's proposal to serve as settlement administrator for the *Doe* lawsuits, are indispensable parties.

Although Kurtzman raises the possibility that Whatley Kallas and Consumer Watchdog may be necessary or indispensable to this action, Kurtzman did not move to dismiss the case on this basis, and the issue is not ripe for disposition by this Court. Notably, KCC did not include Whatley Kallas and Consumer Watchdog as parties in its suit against Aetna in the Central District of California, which more directly implicates the alleged contract at issue. Moreover, Kurtzman's characterization of this action as a breach of contract action is unpersuasive, as Aetna does not contend Kurtzman has a contractual obligation to indemnify it, but seeks indemnity and contribution based on Kurtzman's grossly negligent acts and omissions which proximately caused

the harm giving rise to Aetna's liability. *See Vattimo v. Lower Bucks Hosp.*, 465 A.2d 1231, 1236 (Pa. 1983) (holding the right of indemnity inures to a person "who, without active fault on his own part, has been compelled, by reason of some legal obligation to pay damages *occasioned by the initial negligence of another*, and for which he himself is only secondarily liable" (quoting *Builder's Supply v. McCabe*, 77 A.2d 368, 370 (Pa. 1951) (some emphasis omitted))); 42 Pa. Cons. Stat. Ann. § 8324(a) ("The right of contribution exists among *joint tort-feasors*." (emphasis added)).

Although the Court agrees with Aetna that this case is not a breach of contract action, the alleged contract is nevertheless implicated in this case, as Kurtzman argues its engagement as settlement administrator was governed by the contract to which Aetna is a party and which requires Aetna to indemnify and hold Kurtzman harmless and limits Kurtzman's liability. The contract is also at issue in in Aetna's suit against Whatley Kallas and Consumer Watchdog, in which Aetna contends that Whatley Kallas, not Aetna, was the counterparty to the contract. Furthermore, this case and the Whatley Kallas case are clearly factually intertwined in that the degree to which the defendants in the two cases are at fault for the privacy incident depends in part on the events surrounding the preparation and mailing of the Member Notice in which both Whatley Kallas and Kurtzman played a role. Judicial economy will be best served if both cases are litigated in the same court. *Cf. Howmedica*, 867 F.3d at 402 (noting judicial economy "support[s] 'having . . . two actions in the same district (through transfer)' when the two cases are in different courts but involve 'the same or similar issues and parties'" (quoting 1 Moore, *supra*, § 7.81[3][c])); *MMZ Assocs., Inc. v. Gelco Corp.*, No. 06-3414, 2006 WL 3531429, at *3 (S.D.N.Y. Dec. 8, 2006) (noting that "[w]henever two courts look at the same contract, differing interpretations are possible, even if not likely" (quoting *Keith A. Keisser Ins. Agency v. Nat'l Mut. Ins. Co.*, 246 F.

Supp. 2d 833, 836 (N.D. Ohio 2003))).  Because the Court has concluded it lacks personal jurisdiction over Whatley Kallas and Consumer Watchdog in the Whatley Kallas case and will transfer that case to the Central District of California, judicial economy favors transfer of this case as well.

Although Aetna's choice to file suit in this district carries significant weight in the transfer analysis, several other private and public interests—including where the claim arose, the convenience of witnesses, judicial economy, and, to a lesser extent, Kurtzman's forum preference—weigh in favor of transfer.  After considering all of the relevant private and public interests, the Court is persuaded that, on balance, this action "would more conveniently proceed and the interests of justice be better served" by transfer to the Central District of California.  Accordingly, Kurtzman's motion to transfer will be granted.

An appropriate order follows.

BY THE COURT:


                                                        ___/s/ Juan R. Sánchez___
                                                         Juan R. Sánchez, C.J.